**THE DUGGER LAW FIRM, PLLC**    **LAW OFFICE OF DANIELA NANAU, P.C.**
**Cyrus E. Dugger**    **Daniela Nanau**
**154 Grand St.**    **89-03 Rutledge Avenue**
**New York, New York 10013**    **Glendale, New York 11385**
**Tel: (646) 560-3208**    **Tel: (888) 404-4975**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| LISA B. DELEO, individually and on behalf of all others similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **Demand for Trial by Jury** |
| v. |  |
| NEW YORK CITY DEPARTMENT OF EDUCATION, RASHAUNDA SHAW, DAYNE MCLEAN, and SHARON SPANN, |  |
| Defendants. |  |

---

Plaintiff Lisa B. DeLeo, on behalf of herself and all others similarly situated, by and through undersigned counsel, makes the following allegations against Defendants New York City Department of Education ("NYCDOE"), Rashaunda Shaw ("Shaw"), Dayne McLean ("McLean"), and Sharon Spann ("Spann") (collectively "Defendants") as follows:

### INTRODUCTION

1.    This is a class action brought by Plaintiff on behalf of non-management female employees of NYCDOE at the Globe School of Environmental Research, challenging sex discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York ("NYCHRL").  Plaintiff also brings additional individual claims.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.      The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  Plaintiff's state law claims are so closely related to Plaintiff's claims under Title VII that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Defendants are subject to personal jurisdiction in New York.

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

6.      Venue is also proper pursuant to Title VII's special venue provision, 42 U.S.C. § 2000e-5(f)(3), because the Southern District of New York is the judicial district in which the unlawful employment practices alleged herein were committed.

7.      The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

## PLAINTIFF

8.      Plaintiff Lisa B. DeLeo ("Plaintiff" or "DeLeo") is an adult woman who lives in New York City in the State of New York.

9.      Plaintiff worked as a literacy and/or instructional coach at the Globe School of Environmental Research ("Globe"), a public middle school in the Bronx, within NYCDOE School District 11, from September 2013, until she went on leave in or about March 2014.

10.     Prior to her tenure at Globe, Plaintiff worked for NYCDOE for nineteen (19) years, first as an elementary school teacher, and later as a literacy coach and/or instructional coach. Plaintiff's work focused on mentoring classroom teachers and providing individualized support to students at struggling schools.

## DEFENDANTS

11.     Defendant New York City Department of Education ("NYCDOE") operates and manages public schools within the five boroughs of New York City.

12.     Defendant Rashaunda Shaw has served as the principal of Globe since the summer of 2013.  At all times relevant, Shaw was DeLeo's direct supervisor.

13.     Defendant Dayne McLean has served as the assistant principal at Globe since at least the summer of 2013. At all times relevant, McLean was DeLeo's supervisor within the meaning of Title VII and the NYCHRL.

14.     Defendant Sharon Spann has served as the assistant principal at Globe since at least the summer of 2013. At all times relevant, Spann was DeLeo's supervisor within the meaning of Title VII and the NYCHRL.

## EXHAUSTON OF ADMINISTRATIVE REMEDIES

15.     On January 2, 2015, Plaintiff filled a Charge of Discrimination alleging sexual harassment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

16.     Plaintiff will request a Notice of Right to Sue letter from the EEOC after more than 180 days have passed since the filing of her Charge of Discrimination.

17.     Plaintiff has commenced this action before she received her Notice of Right to Sue letter from the EEOC in order to comply with N.Y. General Municipal Law § 50(e).

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this class action for a finding of liability against NYCDOE under Title VII, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (c)(4), on behalf of a Class of all non-management female employees of the NYCDOE at Globe, at any time from March 8, 2014 through the resolution of this action.

19.     Plaintiff also brings this class action for a finding of liability against the NYCDOE under the NYCHRL, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (c)(4), on behalf of a class of all non-management female employees of the NYCDOE at Globe at any time within three years of the filing of this complaint, through the resolution of this action.

20.     Plaintiff is a member of the Class she seeks to represent.

21.     The members of the Class identified herein are so numerous that joinder of all members is impracticable. Although Plaintiff does not know precisely how many non-management female employees have been employed by NYCDOE at Globe or its predecessors in name, during the liability period their number is far greater than can be feasibly addressed through joinder.

22.     There are questions of law and fact common to the Class, including, but not limited to: (1) whether NYCDOE has had a policy-or-practice of retaliating against female non-management employees at Globe for making and/or attempting to make complaints of sexual harassment; (2) whether NYCDOE has created and/or permitted a retaliatory hostile work environment at Globe; (3) whether NYCDOE has had a policy-or-practice of discriminating against women by treating complaints of sexual harassment by non-management female employees at Globe less favorably than complaints of harassment by non-management male employees at Globe; (4) whether the NYCDOE has failed to implement policies and procedures

to prevent retaliation against female employees who challenged sexual harassment in the workplace, has failed to address sexual harassment complaints, and/or has failed to conduct proper investigations of complaints of sexual harassment at Globe; (5) whether NYCDOE's policies and/or practices violate Title VII and/or the NYCHRL; (6) whether NYCDOE has had a policy and/or practice of discouraging complaints of sexual harassment and whether such policy has had a disparate impact on female employees at Globe; (7) whether, despite such disparate impact a policy of discouraging complaints of sexual harassment was job-related and/or consistent with business necessity; (8) whether equitable, injunctive, back pay, front pay, instatement, re-instatement, and/or compensatory relief is generally available to the class as a result of NYCDOE's discrimination, absent an individual defense in subsequent individual proceedings; (9) the scope of a resulting declaration of liability; (10) the scope of a resulting permanent injunction; (11) whether Plaintiff can establish a *prima facie* case of pattern-or-practice discrimination; (12) whether Defendants can rebut a *prima facie* showing of pattern-or-practice discrimination; and (13) the resulting attorneys' fees and costs due to the class.

23.     The representative Plaintiff's claims are typical of the claims of the Class.

24.     The representative Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

25.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because NYCDOE has acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the class as a whole. The class members are entitled to injunctive relief to end the NYCDOE's common, uniform, unfair, and retaliatory and/or discriminatory policies and/or practices.

26.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(c)(4) because the resolution of additional common issues would reduce the range of issues in dispute and promote judicial economy. Resolution of the issue as to whether Defendants are liable pursuant to Title VII and/or the NYCHRL, under a disparate treatment and/or disparate impact theory of liability, in the first instance, would reduce the range of issues in dispute and promote judicial economy by initially determining whether any subsequent individual damages proceedings are required at all. Similarly, resolution of any one of the issues referenced above would reduce the range of issues in dispute and promote judicial economy if resolved as an issues class pursuant to Fed. R. Civ. P. 23(c)(4).

27.     Excluded from the class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the class.

**FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS**

28.     During Plaintiff's employment at Globe, Assistant Principal McLean made offensive sexual comments to Plaintiff on a frequent basis and ultimately subjected her to conduct that made her fearful of sexual assault.

29.     Assistant Principal McLean's sexual harassment of Plaintiff included, but was not limited to:

30.     During early September 2013, within one or two days of being interviewed and hired by Principal Shaw, with whom Plaintiff had worked successfully at another NYC public

school, Plaintiff was walking through the teachers' lounge when Assistant Principal McLean called her over and directed her to sit with him.

31.    After a few comments about the food he was eating, Assistant Principal McLean began making sexualized comments about Plaintiff's appearance while licking his lips, including "Your hair is beautiful" and "You're sexy."

32.    During this conversation, McLean also intimidated Plaintiff by reminding her of his position of authority over her because he "was the administrator."

33.    After excusing herself from the table, Plaintiff immediately reported this incident to Principal Shaw. She specifically described the sexualized nature of the interaction and asserted that Assistant Principal McLean's behavior was completely inappropriate.

34.    In response, Principal Shaw said: "Stop it Lisa, just ignore it."

35.    When Plaintiff expressed that doing nothing in response to her complaint was unacceptable, Principal Shaw then offered: "If he does it again, let me know."

36.    Several days later, as Plaintiff was passing McLean in the hallway, he moved in close to her and said: "Oh, Ms. DeLeo, so sexy, such beautiful hair."

37.    Plaintiff went to Principal Shaw's office to report Assistant Principal McLean's misconduct within minutes of this second incident of sexual misconduct.

38.    When Plaintiff entered Principal Shaw's office, Shaw's assistant told Plaintiff that Shaw was not available.

39.    Plaintiff immediately wrote a letter to Principal Shaw in which she described the inappropriate sexual comments made during the second incident that had just taken place involving Assistant Principal McLean.

40.    Plaintiff then gave the note to the Principal's assistant for delivery to Shaw.

41.    Principal Shaw never followed up with Plaintiff in person, or by any other means, to discuss her second complaint regarding Assistant Principal McLean's sexual misconduct, nor did Principal Shaw ever advise Plaintiff that she had taken any action way in response to her sexual harassment complaint.

42.    Approximately two weeks later, Assistance Principal McLean approached Plaintiff and whispered into her ear: "Look at you in the dress. So beautiful in that dress. Sexy, sexy."

43.    DeLeo again went to Principal Shaw's office, for the third time, to complain about Assistant Principal McLean inappropriate sexual remarks.

44.    In Principal Shaw's office, while Plaintiff again described several of the incidents during which Assistant Principal McLean had subjected her to inappropriate remarks of a sexual nature, including the incident that occurred that day, Principal Shaw stared at DeLeo blankly and remained silent.

45.    Plaintiff reminded Principal Shaw that after she reported the first incident of sexual misconduct by Assistant Principal McLean to her, Principal Shaw specifically told Plaintiff to inform her if it happened again.

46.    Plaintiff again reiterated that she found Assistant Principal McLean's comments very inappropriate and that Principal Shaw had to take appropriate action to stop the harassment.

47.    Nonetheless, Principal Shaw continued to stare at Plaintiff without saying anything until DeLeo stood up and left her office.

48.    A few weeks later, on or about Friday November 1, 2014, Plaintiff was working in her office at approximately 6:00 p.m.

49.     When Plaintiff looked up from her work, she saw Assistant Principal McLean standing in the doorway of her office, staring at her.

50.     Startled, Plaintiff attempted to ignore Assistant Principal McLean by looking intently at her computer screen, which she did in the hope that he would leave her alone.

51.     Assistant Principal McLean told Plaintiff that he had punched out ten minutes too early and needed to wait until 6 p.m. to re-punch his time card before he could leave.

52.     Assistant Principal McLean then remained standing in Plaintiff's doorway in silence for several minutes.

53.     With Assistant Principal McLean blocking the doorway, and with no other way to leave her office, Plaintiff felt trapped and vulnerable.

54.     When Assistant Principal McLean did not leave after some time, and continued to stare at her, DeLeo began to fear that he might sexually assault her.

55.     Plaintiff gripped a pair of scissors, which she thought to use as a weapon if she needed to defend herself against Assistant Principal McLean.

56.     Suddenly, without warning, Assistant Principal McLean pulled his pants up tight around himself so that the outline of his genitals was clearly visible to Plaintiff through his pants.

57.     Assistant Principal McLean then walked through the door of Plaintiff's office, took a seat directly across from Plaintiff's desk, straddled the chair, and began to vigorously gyrate his genitals into the chair, in the direction of Plaintiff.

58.     Assistant Principal McLean then mumbled to Plaintiff that he was late for his evening D.J. job, where he "play[ed] music for women to come home to, drink a glass of wine and unwind in bubble baths."

59.     During the time McLean was gyrating in the chair in front of her, Plaintiff feared for her safety and did not move.

60.     After approximately ten minutes of gyrating, Assistant Principal McLean got up and walked out of Plaintiff's office without saying anything further to her.

61.     Following the incident with McLean gyrating in the chair in her office, Plaintiff immediately left work and drove home. During her drive home, DeLeo began to violently shake out of fear because of what had just happened to her.

62.     On or about November 4, 2014, the Monday following the gyrating incident, Plaintiff saw Assistant Principal McLean soon after arriving to work.

63.     Assistant Principal McLean immediately walked up to Plaintiff and whispered into her ear, "I thought of you all weekend" and "Your beautiful hair, so sexy."

64.     Assistant Principal McLean then threatened to retaliate against Plaintiff if she complained about him when he said to her: "Just remember, I'm the administrator -- I have the power of the pen."

65.     After issuing this threat, Assistant Principal McLean walked away from DeLeo.

66.     Immediately after Assistant Principal McLean walked away from Plaintiff, Assistant Principal Spann approached DeLeo and asked, "Is something wrong, was Mr. McLean being fresh with you?"

67.     When Plaintiff questioned Assistant Principal Spann about her assumption regarding McLean, Spann said: "Come on. He does it to everyone."

68.     Assistant Principal Spann then said to Plaintiff: "I am asking you if AP McLean is acting in a fresh manner toward you because he has done the same to me. But I just brushed it off

and told him to get away from me [] because other staff members have already complained about him."

69.    When DeLeo asked Assistant Principal Spann why she had never reported Assistant Principal McLean's sexual misconduct, Spann said, "I just told him to get away and none of the other people he did it to would write a formal complaint."

70.    In response, Plaintiff said: "You mean to tell me you've known about Mr. McLean's disgusting behavior all along and never did anything about it?"

71.    Assistant Principal Spann acknowledged to DeLeo that she had never reported or directly confronted Assistant Principal McLean about his sexual misconduct.

72.    Assistant Principal Spann then acknowledged that, as a senior administrator, she should have reported McLean's sexual harassment and other inappropriate conduct.

73.    Assistant Principal Spann apologized for not speaking to McLean in the past and blamed herself for the fact that now Plaintiff was subjected to his "filthy" behavior.

74.    Assistant Principal Spann then directed Plaintiff to write a formal complaint.

75.    Fearing retaliation, DeLeo said she would submit a written complaint about Assistant Principal McLean's mistreatment only if Principal Shaw agreed that she should do so.

76.    Assistant Principal Spann went across the hall to Principal Shaw's office and then returned seconds later, and stated: "Ms. Shaw said to write the complaint now. Write exactly what happened the other night and that's it."

77.    Plaintiff understood that Principal Shaw and Assistant Principal Spann were directing her to exclude from her written complaint any mention of the sexual harassment that Plaintiff had reported to Principal Shaw throughout September and October 2014, in response to which Principal Shaw had taken no action.

78.     Assistant Principal Spann stood directly over Plaintiff while she composed her complaint. She encouraged DeLeo to "hurry up and type it up."

79.     When Assistant Principal Spann observed that Plaintiff was including examples of sexual harassment that she had been subjected to by Assistant Principal McLean in September and October 2014, she asked Plaintiff why she was not adhering to Principal Shaw's directive of limiting the complaint to only what had transpired in November 2014.

80.     Spann specifically stated to Plaintiff that Principal Shaw only wanted her to report the incident on November 1, 2014, when Assistant Principal McLean blocked her doorway, straddled her chair, and gyrated his pelvis towards her in an obscene manner.

81.     DeLeo protested, saying that the prior incidents should be included.

82.     Nonetheless, Spann insisted that Plaintiff's written complaint not include any description of McLean's sexual harassment of her in September and October 2014, or information about Plaintiff's complaints to Principal Shaw during that time period.

83.     As instructed, Plaintiff limited her written complaint to the events of November 1, 2014, which, upon information and belief, Assistant Principal Spann submitted to DOE's Office of Office of Equal Opportunity and Diversity Management ("OEO") later the same day.

84.     Plaintiff's complaint was given OEO Complaint No. 096/13.

85.     Several hours after submitting Plaintiff's complaint about Assistant Principal McLean to DOE's OEO Department, Spann met with DeLeo about another matter.

86.     During that meeting, which took place in Assistant Principal Spann's office, Plaintiff noticed that a copy of her complaint about McLean's sexual harassment was in plain sight, on top of Spann's desk.

87.     Since school staff, including but not limited to Assistant Principal McLean, walked into and out of, and socialized in front of, Spann's desk all day long, Plaintiff was concerned about the confidentiality of her complaint and requested that Spann store the document in a secure place, out of the sight, and not accessible to her colleagues.

88.     Spann told DeLeo she would put it away later, but failed to do so.

89.     Hours later, Plaintiff went to Assistant Principal Spann's office again to discuss a matter unrelated to her complaints about McLean's sexual harassment and saw her written complaint about him still on Spann's conference table.

90.     Plaintiff was so concerned about Spann's failure to keep her complaint about McLean's sexual harassment confidential, she went to Principal Shaw for assistance.

91.     Principal Shaw assured Plaintiff she would "take care of it."

92.     However, Plaintiff observed that the report remained visible on Assistant Principal Spann's desk for several more days following her complaint to Principal Shaw.

93.     Immediately after Assistant Spann submitted Plaintiff's complaint about McLean's sexual harassment to OEO, McLean and others on at Globe began to ostracize and/or retaliate against DeLeo.

94.     For example, colleagues who had previously socialized with Plaintiff stopped speaking with her.

95.     Assistant Principal McLean refused to speak or otherwise interact with Plaintiff, even for work-related purposes.

96.     After Plaintiff complained about McLean's sexual harassment, Principal Shaw substantially increased Plaintiff's duties by allocating to her work that should have been dispersed among several employees, including Assistant Principals Spann and McLean.

97.    After she complained about McLean's sexual harassment, Principal Shaw avoided speaking to Plaintiff.

98.    Approximately ten (10) days after her complaint about McLean's sexual harassment was submitted to NYCDOE's OEO Department, Plaintiff learned from a group of students that she had been accused of hitting a specific student during a recent visit she made to check in on a substitute teacher's class.

99.    Plaintiff immediately informed Principal Shaw of these false accusations.

100.    After one female student confided in Plaintiff that there was a plan to get her fired because she was viewed as a "white bitch" and "nobody wanted [her] in the school," DeLeo urged Principal Shaw to investigate the situation.

101.    The student who confided in DeLeo wrote a statement about the plan against Plaintiff and the efforts to get her fired.

102.    Upon information and belief, Assistant Principal McLean induced the student(s) to make this false accusation in an effort to retaliate against Plaintiff for raising sexual harassment complaints against him.

103.    Plaintiff continued to work at Globe throughout the investigation into the allegations of corporal punishment raised against her by the student.

104.    During the investigation, a friend of the student who raised the allegations against Plaintiff admitted that DeLeo did not hit the student.

105.    Ultimately, the complaining student recanted the allegations she raised against Plaintiff and admitted that she had lied.

106.    On or about December 20, 2013, Plaintiff was called into Principal Shaw's office and told that the corporal punishment accusation made against her was found to be

unsubstantiated. Subsequently,  Plaintiff was issued a letter by NYSDOE stating the charge was unsubstantiated and dismissed.

107.    Before the investigation concluded, in early December 2013, Principal Shaw called Plaintiff on her personal cell phone to reprimand her for filing the sexual harassment complaint against McLean with OEO.

108.    Shaw said to DeLeo: "You should have never filed that complaint against McLean in writing to the EEO office" and further stated that "You should have only provided it directly to me."

109.    In response, Plaintiff faulted Shaw for her inaction in the face of Plaintiff's numerous complaints about McLean's sexual harassment.  Plaintiff told Shaw: "I am a victim of harassment and have done nothing wrong and you had done nothing to curtail Assistant Principal McLean's perverted and unprofessional behavior."

110.    Nevertheless, when school resumed after the winter recess, Principal Shaw told Plaintiff, "You have to make it right with McLean," which Plaintiff understood to mean that she should apologize to McLean for filing the sexual harassment complaint against him.

111.    Plaintiff did not follow Principal Shaw's directive, and did not apologize to McLean for reporting his sexual mistreatment of her.

112.    On or about January 22, 2014, Plaintiff received a telephone call from Victoria Ajibade ("Ajibade"), a Title IX coordinator at NYCDOE's OEO Department.

113.    Ajibade said she was calling Plaintiff to discuss her November 2013 complaint regarding McLean.

114.    DeLeo complained to Ajibade about the breach of confidentiality regarding her complaint.  She explained that, despite being repeatedly promised that her complaint would be kept confidential, someone must have informed McLean and her co-workers about it.

115.    Ajibade failed to question Plaintiff about how this apparent breach of confidentiality affected her work environment.

116.    Plaintiff did not volunteer to Ajibade any more information about the retaliation she was suffering at that time because she feared further retaliation.

117.    Plaintiff specifically feared another student might raise false allegations against her at the urging of McLean or she would be subjected to further retaliation by Shaw, McLean, and/or Spann, and that such retaliation would irreparably damage her reputation at the NYCDOE if she did not drop her complaint against McLean and appease Shaw by dropping her complaint.

118.    Defendants' retaliatory treatment of Plaintiff continued.

119.    Immediately following the February 2014 recess, Principal Shaw met with Plaintiff, handed her a classroom program, and informed her that she would be responsible for teaching nine (9) classes in addition to her other duties.

120.    When DeLeo asked if Shaw would reassign some of the other duties that Plaintiff had been asked to take on earlier in the year, which went beyond the work defined in Plaintiff's job description, Shaw refused and told her: "No, they are your jobs and you are responsible for getting them done."

121.    On or about March 11, 2014, Plaintiff was assisting a teacher in a classroom when a student, who was being bullied by several others, threw a desk that inadvertently landed on Plaintiff's foot.

122.    Several bones in Plaintiff's foot were broken as a result of this incident.

123.    Two days after the accident, on or about March 13, 2014, Plaintiff explained to Principal Shaw that she needed time off to see a doctor because she could not walk. Principal Shaw rolled her eyes, suggesting that she did not believe Plaintiff was hurt.

124.    Principal Shaw called DeLeo the next day to ask when she would be returning to work.

125.    In response, Plaintiff explained that her foot was in a cast and she could not walk well.

126.    Plaintiff further explained that she was experiencing severe panic attacks and anxiety because of the sexual harassment and retaliation from Assistant Principal McLean.

127.    In response, Principal Shaw laughed, told Plaintiff to "stop it," and then asked again when she would be returning to work.

128.    Throughout DeLeo's leave from work, Principal Shaw repeatedly called Plaintiff and pressured her to immediately return to work.

129.    Plaintiff responded by informing Shaw that she could hardly walk and could not drive because the broken foot was her driving foot.

130.    Principal Shaw continued to pressure Plaintiff to return to work by making periodic calls to her about her return and by instructing others on the school staff to make such calls on her behalf. For example, on one occasion, an associate of Principal Shaw called Plaintiff and told her to "toughen up and get back to work, you're a healthy girl, you need to get back to your job."

131.    In June 2014, during a telephone call with Principal Shaw, Plaintiff told her that she could not return to Globe and requested a "safety transfer" to another school.

132.     Principal Shaw refused and told DeLeo that her only option for future employment with NYCDOE was to find her own job on the open market.

133.     Although Plaintiff applied to over twenty (20) NYCDOE job postings, and despite her good performance reviews, excellent recommendations from NYCDOE employees, and substantial experience teaching for NYCDOE, she did not receive one (1) call for an interview.

134.     On or about August 25, 2014, Principal Shaw called Plaintiff and contradicted the position she had previously taken regarding DeLeo's complaint about McLean's sexual harassment. Shaw told Plaintiff, "you should have pursued the charges against McLean."

135.     Shaw alleged that because Plaintiff did not pursue the EEOC complaint, "they won't write a report now . . . so I can't get rid of him."

136.     During the same conversation, Principal Shaw noted to Plaintiff that she had received several other complaints about McLean's sexual misconduct and that she was aware of prior sexual harassment complaints about McLean, which had been raised by NYCDOE staffers before either Plaintiff or Shaw started working at Globe.

137.     Principal Shaw continued to pressure Plaintiff to return to work at Globe, although she never promised that the hostile work environment or the retaliation that DeLeo had been subjected to would be remedied.

138.     Plaintiff is currently on "Personal Medical Leave of Absence Without Pay" and her future as an instructor at NYCDOE is uncertain.

139.     Shaw and NYCDOE continue to retaliate against Plaintiff by failing to act on her requests for a safety transfer to another school, and by failing to support her applications for a position at school other than Globe, in an effort to prevent Plaintiff from being reinstated as an instructor for NYCDOE.

140.    McLean's sexual harassment and the failure of Shaw or anyone else authorized by NYCDOE to take meaningful remedial action to stop the sexual harassment that was known to them, and Defendants' retaliatory treatment of Plaintiff for complaining about sexual harassment, have caused and continue to cause Plaintiff severe emotional distress.

### FIRST CAUSE OF ACTION
**Sexual Harassment in Violation of Title VII**
**(Brought on behalf of Plaintiff Against NYCDOE)**

141.    Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

142.    Defendant subjected Plaintiff to a hostile work environment and/or otherwise discriminated against Plaintiff based on Plaintiff's female sex.

143.    Defendants' conduct violated Title VII.

144.    Defendant's illegal conduct proximately caused Plaintiff's injuries.

### SECOND CAUSE OF ACTION
**Intentional Sex Discrimination in Violation of Title VII**
**(Brought on behalf of Plaintiff and the Class Against NYCDOE)**

145.    Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

146.    This Claim is brought by Plaintiff on behalf of herself and the class she represents.

147.    Upon information and belief, Defendants intentionally discriminated against Plaintiff and the Class.

148.    Upon information and belief, NYCDOE has engaged in an intentional systematic policy, pattern, and/or practice of discrimination against its non-management female employees at Globe by, among other things: (1) having a policy and/or practice of permitting, ignoring, and/or failing to address sexual harassment of non-management female employees (2) having a policy and/or practice of failing and refusing to take reasonable and adequate steps to prevent

19

and correct sexual harassment concerning non-management female employees; and/or (3) having a policy and/or practice of being unreceptive to complaints and/or attempted complaints of sexual harassment by non-management female employees..

149.    Upon information and belief, NYCDOE was aware of the discriminatory effects and/or disparate impact on non-management female employees resulting from the above policies, practices, and/or procedures, but took no corrective action and/or acquiesced to such discriminatory effects.

150.    Upon information and belief, the lack of job-relatedness of the above policies, procedures, and/or practices should have been apparent to the NYCDOE.

151.    As a direct result of NYCDOE's polices, practices, and/or procedures Plaintiff and the class have suffered damages, including, but not limited to, compensatory damages.

152.    The foregoing constitutes illegal, intentional discrimination, and/or unjustified disparate treatment prohibited by 42 U.S.C. §§ 2000 *et seq.*

### THIRD CAUSE OF ACTION
**Sexual Harassment and/or Sex Discrimination in Violation of the NYCHRL**
**(Brought on behalf of Plaintiff Against the NYCDOE, Spann, and McLean)**
**(Brought on behalf of the Class Against NYCDOE)**

153.    Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

154.    This Claim is brought by representative Plaintiff on behalf of herself and the class she represents.

155.    Upon information and belief, Defendants intentionally discriminated against Plaintiff and the Class.

156.    Defendants' conduct violated the New York City Human Rights Law, including but not limited to, by subjecting her to sexual harassment and/or a sexually hostile work environment in violation of the NYCHRL.

157.    Defendants discriminated against Plaintiff in violation of the NYCHRL by subjecting her to a sexually hostile work environment and/or sexual harassment.

158.    Defendants' illegal conduct proximately caused Plaintiff's injuries.

159.    As a result of Defendants' conduct Plaintiff has suffered emotional distress and is entitled to compensatory damages and additional relief pursuant to NYC Admin. Code § 8-502(a).

160.    This conduct rose above the level above petty slights and trivial inconveniences and/or Defendants treated Plaintiff less well than other employees because of her sex as a result of this conduct.

161.    The above-described conduct, both individually and collectively, rose to the level of a sexually hostile work environment under the NYCHRL.

162.    As Plaintiff's supervisors, Shaw and McLean are personally liable pursuant to N.Y.C. Admin. Code § 8-107(1)(a), (6).

163.    Upon information and belief, NYCDOE has engaged in an intentional systematic policy, pattern, and/or practice of discrimination against its non-management female employees at Globe by, among other things: (1) having a policy and/or practice of permitting, ignoring, and/or failing to address sexual harassment of non-management female employees; (2) having a policy and/or practice of failing and refusing to take reasonable and adequate steps to prevent and correct sexual harassment concerning non-management female employees and/or (3) having a policy and/or practice of being unreceptive to complaints and/or attempted complaints of sexual harassment by non-management female employees.

164.    Upon information and belief, NYCDOE was aware of the discriminatory effects and/or disparate impact on non-management female employees resulting from the above policies,

practices, and/or procedures, but took no corrective action and/or acquiesced to such discriminatory effects.

165.    Upon information and belief, the lack of job-relatedness of the above policies, procedures, and/or practices should have been apparent to the NYCDOE.

166.    As a direct result of NYCDOE's polices, practices, and/or procedures Plaintiff and the class have suffered damages, including, but not limited to, compensatory damages.

167.    The foregoing constitutes illegal, intentional discrimination, and/or unjustified disparate treatment prohibited by the NYCHRL.

**FOURTH CAUSE OF ACTION**
**Retaliation in Violation of Title VII**
**(Brought on behalf of Plaintiff and the Class Against NYCDOE)**

168.    Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

169.    This Claim is brought by the representative Plaintiff on behalf of herself and the class she represents.

170.    Plaintiff engaged in protected activity under Title VII.

171.    Because of this protected activity, Defendant took materially adverse actions against Plaintiff, including, but not limited to, attempted termination of her employment, denial of requests for transfers, and additional conduct that would sufficiently deter a reasonable person from engaging in protected activity.

172.    Defendant's illegal conduct proximately caused Plaintiff's injuries.

173.    In addition, upon information and belief, NYCDOE has engaged in an intentional systematic policy, pattern, and/or practice of retaliating against its non-management female employees at Globe who make, or attempt to make, complaints of sexual harassment, and/or creating, acquiescing to, and/or permitting a retaliatory hostile work environment with respect to

such complaints and/or attempted complaints of sexual harassment by non-management female employees at Globe.

174.    As a direct result of NYCDOE's policies and/or practices Plaintiff and the class have suffered damages, including, but not limited to, lost wages and emotional distress.

<u>FIFTH CAUSE OF ACTION</u><br>
<b>Retaliation in Violation of the NYCHRL</b><br>
<b>(Brought on behalf of Plaintiff Against the NYCDOE, Shaw, McLean, and Spann)</b><br>
<b>(Brought on Behalf of Plaintiff and the Class Against NYCDOE)</b>

175.    Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

176.    This claim is brought by the representative Plaintiff on behalf of herself and the class she represents.

177.    Plaintiff engaged in protected activity under the NYCHRL.

178.    Because of this protected activity, Defendants took adverse actions against Plaintiff, including, but not limited to, attempted termination of her employment, denial of requests for transfers, and additional conduct that would sufficiently deter a reasonable person from engaging in protected activity.

179.    Defendant's illegal conduct proximately caused Plaintiff's injuries.

180.    In addition, upon information and belief, NYCDOE has engaged in an intentional systematic policy, pattern, and/or practice of retaliating against its non-management female employees at Globe who make, or attempt to make, complaints of sexual harassment, and/or creating, acquiescing to, and/or permitting a retaliatory hostile work environment with respect to such complaints and/or attempted complaints of sexual harassment by non-management female employees at Globe.

181.    As a direct result of NYCDOE's policies and/or practices Plaintiff and the class have suffered damages, including, but not limited to, lost wages and emotional distress.

182.   As supervisors of Plaintiff, Shaw, McLean, and Spann, are personally liable for their retaliation pursuant to N.Y.C. Admin. Code § 8-107(1)(a), (6).

**SIXTH CAUSE OF ACTION**
**Disparate Impact Discrimination in Violation of Title VII**
**(Brought on Behalf of Plaintiff and the Class Against the NYCDOE in the Alternative)**

183.   Plaintiff incorporates by reference the preceding paragraphs as alleged above.

184.   This claim is brought by the representative Plaintiff on behalf of herself and the class she represents.

185.   Upon information and belief, in the alternative, if NYCDOE has not had an intentional systematic policy, pattern, and/or practice of retaliating against its non-management female employees who make, or attempt to make, complaints of sexual harassment, NYCDOE has had a policy, pattern, and/or practice of discouraging, failing to address, complaints of sexual harassment and/or discrimination generally, which has resulted in a disparate impact of non-management female employees with respect to adverse employment actions, professional development and /or support, promotions, transfers, terminations, leaves of absence, and/or early retirement at Globe.

186.   Upon information and belief, the above polices were neither job related nor consistent with business necessity.

187.   As a direct result of NYCDOE's policies and/or practices Plaintiff and the class have suffered damages.

188.   The foregoing conduct constitutes unlawful discrimination in violation of 42 U.S.C. §§ 2000 *et seq.*

**SEVENTH CAUSE OF ACTION**
**Disparate Impact Discrimination in Violation of the NYCHRL**
**(Brought on Behalf of Plaintiff and the Class Against the NYCDOE in the Alternative)**

189.    Plaintiff incorporates by reference the preceding paragraphs as alleged above.

190.    This Claim is brought by the Representative Plaintiff on behalf of herself and the Class she represents.

191.    Upon information and belief, in the alternative, if NYCDOE has not had an intentional systematic policy, pattern, and/or practice of retaliating against its non-management female employees who make, or attempt to make, complaints of sexual harassment, NYCDOE has had a policy, pattern, and/or practice of discouraging, failing to address, complaints of sexual harassment and/or discrimination generally, which has resulted in a disparate impact on non-management female employees with respect to adverse employment actions, professional development and/or support, promotions, transfers, terminations, leaves of absence, and/or early retirement at Globe..

192.    Upon information and belief, the above polices were neither job-related nor consistent with business necessity.

193.    As a direct result of NYCDOE's policies and/or practices Plaintiff and the class have suffered damages.

194.    The foregoing conduct constitutes unlawful discrimination in violation of the NYCHRL.

### EIGHTH CAUSE OF ACTION
**Deprivation of Equal Protection of Laws in Violation of 42 U.S.C. § 1983**
**(Brought on behalf of Plaintiff Against Shaw and McLean)**

195.    Plaintiff incorporates by reference the preceding paragraphs as alleged above.

196.    Defendants Shaw and McLean, acting under color of state law, deprived Plaintiff of federally protected rights secured by the Fourteenth Amendment of the U.S. Constitution, as

well as rights secured by 42 USC §2000e, *et seq.,* with reckless and/or callous indifference, as motivated by evil intent.

197.    Defendants Shaw and McLean's conduct proximately caused Plaintiff's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

(a)  certification of the above-described classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b)  designation of Plaintiff as class representative and counsel of record as Class Counsel;

(c)  Issuance of a declaratory judgment that the acts complained of herein are in violation of Title VII and the NYCHRL;

(d)  Issuance of a declaratory judgment of the categories of relief generally available to members of the class, in subsequent individual proceedings, absent an individual defense, as a result of such violations of the Title VII and the NYCHRL.

(e)  An injunction permanently restraining these violations of Title VII and the NYCHRL;

(f)  Damages related to Plaintiffs' loss of compensation, emotional suffering and distress caused by Defendants' actions;

(g)  An award to Plaintiffs for reasonable attorneys' fees and costs;

(h)  pre-judgment interest and post-judgment interest; and

(i)  All such other and further relief as the Court deems necessary and proper

## DEMAND FOR TRIAL BY JURY

 Plaintiff hereby demands a jury trial.

Dated: January 26, 2015
      New York, New York

Respectfully submitted,

By: _____
      Daniela Nanau

**THE DUGGER LAW FIRM, PLLC**
Cyrus E. Dugger
154 Grand St.
New York, New York 10013
Tel:  (646) 560-3208

**LAW OFFICE OF DANIELA NANAU, P.C.**
Daniela Nanau
89-03 Rutledge Avenue
Glendale, New York 11385
Tel: (888) 404-4975